**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES VALE,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS COLLINS, Secretary, U.S. Department of Veterans Affairs<br><br>Defendant. | Civil Action No. 25-2663 (EGS) |

**MEMORANDUM OPINION**

Plaintiff James Vale ("Mr. Vale") brings this action against Douglas Collins, Secretary of the U.S. Department of Veterans Affairs ("Mr. Collins" or "Defendant")[1] due to the alleged miscalculations of Mr. Vale's back pay award. *See* Compl., ECF No. 1. Pending before the Court is Defendant's Motion to Dismiss. Upon careful consideration of the Motion, Opposition, and Reply thereto; and the applicable law; and for the reasons explained below, the Court **GRANTS** Defendant's Motion to Dismiss.

## I. Background

The following facts are taken from the allegations in the Complaint, which the Court assumes are true for the purposes of

[1] Mr. Vale seems to use "Defendant" interchangeably throughout his Complaint regarding both Mr. Collins and the VA, and therefore the Court will use "Defendant" to encompass both.

deciding this motion and construes in Mr. Vale's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

Mr. Vale was a Supervisory Senior Counsel at the Department of Veterans Affairs ("VA")'s Board of Veterans' Appeals. *See* Compl., ECF No. 1 ¶ 21.[2] Mr. Vale was terminated from his position on September 30, 2016 after being "subjected to discrimination and a hostile work environment based on his disability." *Id.* ¶ 22.

On January 15, 2017, Mr. Vale filed a formal complaint with the VA's Equal Employment Opportunity Office, alleging discrimination and a hostile work environment based on his disability. *Id.* ¶ 9. On February 21, 2017, he filed a timely hearing request before the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 10.

On February 25, 2019, "Defendant issued a Final Agency Decision . . . finding . . . that Plaintiff was discriminated against when the [VA] failed to reasonably accommodate his disability, but that [Mr. Vale] failed to establish . . . that he was subjected to constructive discharge or a hostile work environment." *Id.* ¶ 11. The same day, Mr. Vale filed an appeal with the EEOC Office of Federal Operations ("OFO"). *Id.* ¶ 12. On

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

September 17, 2020, the OFO issued a decision finding that Mr. Vale was discriminated against based on his disability and that he was constructively discharged. *Id.* ¶ 13. The OFO ordered Defendant to determine the appropriate amount of back pay with interest, leave, and other benefits due to Mr. Vale between the date of his discharge, September 30, 2016, and "the date of his reinstatement or his declination of the offer of reinstatement." *Id.* Defendant was also ordered to pay the amount within sixty (60) days of the date of the determination of the appropriate amount. *Id.*

On June 13, 2024, Mr. Vale received a check for $306,591.00 for back pay, but he did not receive an explanation regarding how the sum was calculated. *Id.* ¶ 14. On July 25, 2024, Mr. Vale filed a Petition for Enforcement "due to Defendant's failure to comply with the OFO's September 17, 2020 Order." *Id.* ¶ 15. On October 11, 2024, Defendant filed documentation explaining their methodology in calculating Mr. Vale's back pay. *Id.* ¶ 16.

On November 2, 2024, Mr. Vale "notified the Compliance Officer that upon review of Defendant's final calculations of the back pay award, Defendant failed to properly calculate back pay." *Id.* ¶ 17. Specifically, Mr. Vale alleges that Defendant underreported his income to the Social Security Administration between 2016 and 2021, failed to apply the Federal Insurance Contributions Act taxes deducted from the award to the back pay

period, and failed to deduct $93,000 for the award as requested by six TSP-1 forms. *Id.* ¶ 24. On May 15, 2025, the OFO determined that the documentation submitted by Defendant was sufficient to demonstrate that they had taken the "corrective action(s) ordered in the Commission's decision." *Id.* ¶ 18.

On August 13, 2025, Mr. Vale filed his Complaint. *See id.* Defendant filed his Motion to Dismiss ("Mot.") on January 26, 2026, alleging that the Court lacks subject matter jurisdiction to hear the claim, or in the alternative, that Mr. Vale has failed to state a claim upon which relief can be granted.[3] *See* Mot., ECF No. 7. Mr. Vale filed his Opposition to the Motion to Dismiss on March 11, 2026. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss & Mem. in Supp. Thereof ("Opp'n"), ECF No. 9. Defendant filed his reply on April 10, 2026. *See* Reply in Further Supp. of Def.'s Mot. to Dismiss ("Reply"), ECF No. 10.

The motion is now ripe and ready for the Court's adjudication.

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the

[3] Because the Court determines that it lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), it need not reach whether Mr. Vale has stated a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000). Moreover, because subject-matter jurisdiction relates to the Court's power to hear the claim, the Court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion. *Uberoi v. EEOC*, 180 F. Supp. 2d 42, 44 (D.D.C. 2001). In resolving a motion to dismiss for lack of subject-matter jurisdiction, the Court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal citations and quotation marks omitted).

## III. Analysis

### A. The Court lacks subject matter jurisdiction.

Mr. Vale requests that pursuant to the Back Pay Act[4], the Court grant him relief requiring Defendant to recalculate and

[4] 5 U.S.C. § 5596.

adjust his back pay award to address the alleged issues regarding how it was calculated.[5] *See* Compl., ECF No. 1 at 5–6. Defendant argues that the Back Pay Act does not independently confer jurisdiction on the Court, and because Plaintiff seeks a monetary award from the United States government, his claim is subject to the Tucker Act[6], which requires that his claim be heard in the United States Court of Federal Claims ("Court of Federal Claims"). *See* Mot., ECF No. 7 at 6–8. Mr. Vale disagrees, arguing that "the Tucker Act only applies to claims based on an express or implied contract with the United States," and "there is no express or implied contract between the parties" here. Opp'n, ECF No. 9 at 7.

The Tucker Act "vests exclusive jurisdiction in the United States Court of Federal Claims over claims against the United States for 'liquidated or unliquidated damages in cases not sounding in tort' for actions seeking more than $10,000." *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (citing 28 U.S.C. § 1491)). In other words, "[a] claim is subject to the

[5] Mr. Vale's Complaint includes a section entitled "Equitable Relief." *See* Compl., ECF No. 1 at 6. However, he does not ask the Court to grant any relief but rather states that "the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules, and regulations, present a clear and present danger to the employees of Defendant and could result in further illegal actions on the part of Defendant." Therefore, the Court does not consider Mr. Vale's Complaint to be requesting any equitable relief.

[6] Codified in 28 U.S.C. §§ 1346(a), 1491.

Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Remmie v. Mabus*, 898 F. Supp. 2d 108, 116 (D.D.C. 2012) (citing *Kidwell v. Dep't of Army, Bd. for Correction of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995)); *see also Bowens v. Massachusetts*, 487 U.S. 879, 906 n.42 (1988) (stating that the Back Pay Act is the kind of statute that has been "interpreted as mandating compensation by the Federal Government for the damage sustained" and therefore claims pursuant to it are subject to the Tucker Act (internal citation omitted)). "Where the jurisdiction of the court turns on whether the complaint seeks monetary relief, the court must generally limit itself to the four corners of the complaint." *Roseberry-Andrews v. Wilson*, 292 F. Supp. 3d 446, 453 (D.D.C. 2018) (internal citation omitted).

Despite his assertions to the contrary, the test to determine if the Tucker Act applies to his claim is not whether Mr. Vale had a "express or implied contract" with the United States, but rather if his claim is "in essence" seeking monetary damages from the United States government. *Remmie*, 56 F.3d at 284. By requesting that the Court grant him relief and require Defendant to "[r]ecalculate and adjust [his] back pay award," *see* Compl., ECF No. 1 at 6 (Prayer for Relief); Mr. Vale is seeking a monetary award for damages as a remedy for harm caused

by the miscalculation.

Moreover, the Court agrees with Defendant that *Johnson v. Brennan*[7] is distinguishable here. In *Johnson*, the Court determined that it did have jurisdiction because it was unclear based on the record before the Court whether the plaintiff was seeking enforcement of the award he had been granted during the administrative process, or if he was seeking relief beyond what was granted. 144 F. Supp. 3d at 129–30. Here, there is no ambiguity in the record, and it is clear that Mr. Vale's claim goes beyond enforcement of the administrative relief he has already received because he is "seek[ing] to recover the financial 'losses' he experienced by [Defendant's] 'improper calculation.'" Reply, ECF No. 10 at 2–3.

Because the Back Pay Act itself does not confer independent jurisdiction onto federal district courts to hear claims under the Back Pay Act, *see Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 176 (D.C. Cir. 2013); Mr. Vale's claim pursuant to the Back Pay Act is subject to the Tucker Act. *Cf. Weber v. Hurtgen*, 297 F. Supp. 2d 58, 62 (D.D.C. 2003) (explaining that because the Equal Pay Act does not contain a specific jurisdictional grant, related claims are subject to the Tucker Act). Moreover, the Court agrees with Defendant that although Mr. Vale does not

[7] 144 F. Supp. 3d 121 (D.D.C. 2015).

specify the amount of damages he seeks, he cannot argue that he seeks less than $10,000 in damages, given that he identified at least $93,000 that Defendant did not contribute to his Thrift Savings Plan. *See* Mot., ECF No. 7 at 8 (citing Compl., ECF No. 1 ¶ 24). Because he seeks more than $10,000 in damages from the United States government, his claim *must* be heard in the Court of Federal Claims.

Because the Tucker Act applies, the Court of Federal Claims has exclusive jurisdiction to hear Mr. Vale's claim, and this Court lacks subject-matter jurisdiction.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss, ECF No. 7; and **DISMISSES** this action without prejudice. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**September 28, 2026**